Starr *v.* Liftchild.

The judgment should be affirmed.

[KINGS GENERAL TERM, December 14, 1863. *Brown, Scrugham* and *Lott*, Justices.]

---

## STARR *vs.* LIFTCHILD.

Where the principal of a school undertakes that he will, during a specified term, instruct a pupil in the learning and knowledge taught at his school, receive him into his family, and protect him and provide for his physical wants, for a specific compensation, he cannot, for some actual or supposed transgression of the pupil, withdraw his care and protection, deny him the shelter and comfort of his house, and under the name or form of punishment, leave him a wanderer in the streets, destitute of the means of subsistence, without forfeiting the compensation agreed to be paid him.

In the absence of express stipulations in such a contract, to that effect, the principal cannot as a punishment for a transgression actually ascertained, expel the pupil from the shelter and protection of his house, or refuse to receive him back at his father's request, after he has voluntarily left, and then claim the compensation stipulated in the contract.

Such a contract is entire. It cannot be separated and apportioned, and the amount awarded to the principal for the time he actually furnished board and tuition to the pupil. If he refuses to furnish them for the whole period, he is not entitled to recover any thing.

APPEAL from a judgment entered on the report of a referee. The material facts appear in the opinion of the court.

*L. R. Marsh,* for the plaintiff.

*G. T. Jenks,* for the defendant.

*By the Court,* BROWN, J. The plaintiff is the principal of the Commercial Collegiate Institute, situate at Yonkers,

in the county of Westchester. He is by profession an instructor of youth, and receives into his family thirty young gentlemen, whom he qualifies by a course of liberal studies for the business pursuits of life, or for admission into any of the colleges and universities of the country. The defendant resides in the city of New York, which is some 15 miles distant from Yonkers. The academic year at the plaintiff's school or institute consists of two terms of 22 weeks each; one of which commences on the 1st day of May, and the other on the 1st day of November, in each year. Some time prior to the 1st of November, 1859, the parties entered into a contract by which the plaintiff, on that day, agreed to receive the defendant's son, Horatio, into his family and as a pupil at his school, for instruction in the course of studies pursued thereat, for the term of 22 weeks, which commenced on the 1st day of November, and which was to terminate at the expiration of 22 weeks thereafter; during which term the plaintiff was also to furnish the son, Horatio, with the necessary board, &c. in his own family. As an inducement to parents to intrust the plaintiff with the care of their children, the plaintiff, in his printed circular, said: "It is his purpose to be the companion of those intrusted to his charge, that he may be their constant mentor, in their studies, in their recreations, and in the home circle; and thus avail himself of every opportunity as it arises for their improvement." In consideration whereof the defendant agreed to pay to the plaintiff the sum of $150, which, by the terms of the contract, as expressed in the printed circular of the plaintiff, was payable in advance, but which was modified at the instance and for the convenience of the defendant, in respect to time, so that the plaintiff accepted the promissory note of the defendant, dated November 1st, 1859, for $150, payable to the order of N. W. Starr, at the Ocean Bank, New York city, three months after date. This note was delivered to the plaintiff on or about the day it bears date. In pursuance of the agreement, the son, Horatio, was received into the plain-

Starr *v.* Liftchild.

tiff's family and school, on the day when the note bears date, where he remained pursuing his studies in the usual manner, until Wednesday, the 25th day of January, thereafter, when the plaintiff having discovered some improper conduct on the part of some of his pupils, announced at the breakfast table and in their presence, that he intended to investigate it and punish the offenders. The son, Horatio, thereupon immediately left the school, without permission of any person, and returned to his father's house, in the city of New York. On the next day, Thursday, he was brought back to the school by his mother, who requested the plaintiff to receive him again into his family and school. The plaintiff replied that he had set apart the Saturday following for the proposed investigation into the misconduct of his pupils, and he refused to receive the boy, Horatio, back again into his school and family, until the investigation had taken place; but said to the mother he would receive the boy again on the Monday following. He made no offer or proposition as to the care or maintenance of Horatio in the mean time. The mother took the boy away with her to the city of New York, and he never returned again to the family or school of the plaintiff. When the note fell due it was not paid, and the present action was brought to recover the sum due thereon. The action was tried before a referee, who made a report in favor of the plaintiff, for the principal sum due on the note, with the interest, upon which judgment was entered, and the defendant appealed.

The boy Horatio's complicity with the offense which the plaintiff charged against the pupils of his school is a question of no moment to the present inquiry. He was the sole judge whether an offense had been committed, and of the scholar's guilty connection with it. Standing in the place of the parent, he had all the rights incident to that relation; and upon the question of the transgression of the rules of the school, or the observances necessary to the government and good order of his family, we regard his authority as all but absolute, and

Starr *v.* Liftchild.

not open to examination and inquiry, as we also do in regard to the guilt or innocence of those charged with their infraction. He is also the sole and absolute judge of the punishment to be inflicted, with this limitation, that it shall be reasonable and usual, and not destructive of the objects of the relation, or subversive of the contract under which the relation exists. The plaintiff undertook that he would, during the period of 22 weeks, instruct this boy in the learning and knowledge taught at his school, receive him into his family, and protect him and provide for his physical wants, and at the same time be the constant companion of his studies and recreations, in what he called the home circle. That he would in fact be to him a parent and protector as well as an instructor. These are weighty obligations, and they are obligations contracted with the father, and for which he was to reward and remunerate him. To entitle him to that remuneration he must fulfill the contract on his part. He cannot for some actual or supposed transgression of the boy, withdraw his care and protection, deny him the shelter and comfort of his house, and under the name or form of punishment leave him a wanderer in the public streets, without the means of subsistence. Such a mode of punishment is neither reasonable nor usual; for in many cases it would expose the health as well as the morals of the pupil to certain destruction. It is subversive of the ends and purposes of the contract; because under pretense of inflicting a salutary punishment for the reformation of the offender, it releases and relieves the person prescribing it, for the time being, from his duties and obligations under the contract. In the absence of express stipulations to that effect in the contract, we think the plaintiff could not as a punishment for a transgression of the rules of his school or the order of his family, actually ascertained, expel the pupil from the shelter and protection of his house, or refuse to receive him back at his father's request, after he had voluntarily left, and still claim the compensation stipulated in the contract. The boy left, without the knowledge and against

Starr *v.* Liftchild.

the will of his father, on Wednesday, was brought back by the mother immediately, and the plaintiff refused to receive him. It is no answer to the evil and inevitable consequences to result from the right which the plaintiff claims to exercise, to say that the boy thus abandoned could resort and did resort to the shelter and protection of his father's house, only 15 miles distant. If the right exists at all, its exercise is not limited by distance, more or less. If it can be exercised upon a boy whose parents live at the distance of 15 miles, it may also be exercised upon another whose parents may be 150 miles distant. Nor did the plaintiff's offer to receive the boy back again on the Monday following the Thursday when the plaintiff refused to receive him, excuse or justify the plaintiff in his refusal. The plaintiff's obligation to provide for and protect the boy extended over all the time between the 1st of November and the 31st of March following, as well as it did to the time to elapse after the Monday named. The plaintiff's duty was fixed by the contract, and could not be limited or reduced a single day without the assent of the other contracting party. During the four days to elapse between Thursday and Monday, this boy must have been supplied with food and other necessaries to satisfy the cravings of nature, and that these things were supplied by others and the lad not exposed to want and suffering, is no reason for giving the plaintiff the benefit of a contract which he refused to fulfill.

The contract is entire ; it cannot be separated and apportioned, and the amount awarded to the plaintiff for the time he actually furnished board and tuition to the boy. He was to receive the entire sum of $150 for the 22 weeks' board and tuition. Having refused to furnish it he is not entitled to recover any thing. He must recover all or nothing.

The judgment should be reversed, and a new trial granted at the circuit, with costs to abide the event.

[KINGS GENERAL TERM, December 14, 1863. *Brown, Scrugham* and *Lott,* Justices.]