## THE PEOPLE *on rel.* McHUGH *a.* THE SCHOOL OFFICERS.

*Supreme Court, First District; General Term, June,* 1864.

MANDAMUS TO REINSTATE TEACHER.—BOARD OF EDUCATION AND TRUSTEES OF COMMON SCHOOLS IN THE CITY OF NEW YORK.—APPEAL TO THE BOARD OF TRUSTEES.

The Board of Education have no appellate jurisdiction over the trustees of common schools, in the exercise of their power to dismiss teachers and other officers of the ward schools and ward primaries.*

---

* In-the case of THE PEOPLE *ex rel.* McGEAN *a.* THE SCHOOL OFFICERS (*Supreme Court, First District; Special Term,* 1863), it was *held*, that the court would not by mandamus review the discretion of the local board of trustees in respect to the

Appeal from an order denying a motion for a mandamus.

This case arose upon the removal of the relator, Miss Mary A. McHugh, from the position of first assistant teacher of Grammar School No. 23, by the local board of trustees of common schools of the Sixth Ward.

The relator was employed by the board of school trustees of the Sixth Ward as a teacher in one of their grammar schools on the 23d day of July, 1856, at a salary of $400 per annum.

She continued in such capacity until subsequent to the 24th day of June, 1861, when she received a notice that her services

discipline and management of the school. This was an application on the part of Catherine McGean, by Hugh McGean, her father, for a writ of mandamus against the Board of School Trustees of the Ninth Ward of the city of New York, to compel them to restore the relator to her position as a pupil in Grammar School No. 16 in West Thirteenth street.

Miss McGean was suspended by the principal of the school for alleged insubordination in refusing to sing the chorus of a school-song called the "Battle Hymn of the Republic."

An unsuccessful application was made to the local board for her restoration, and then an appeal was taken to the Board of Education. A special committee was appointed, and on the recommendation of the committee a resolution adopted requesting the local board to rescind the resolution expelling her from the school, and restore Miss McGean to her place in the school.

The local board paid no attention to this resolution, and in July the Board of Education directed their president and clerk to withhold their signatures from warrants in payment of salaries, or for any other purpose, until the board of trusteees of the Ninth Ward rescinded their resolution dismissing Miss McGean.

It was found that under this resolution all payments for school purposes were stopped, and a special meeting at once called, whereat the resolution was rescinded, and the Board of Education refused to adopt one directing the officers of the board to withhold their signatures to warrants for the pay of the teachers in the Ninth Ward until the restoration of Miss McGean.

Upon this application it was shown in behalf of the young lady that she claimed to consider the song irreverent, and that the school had discontinued the singing of it on the direction of the local board.

*L. B. Woodruff*, for the local board.

*Mr. Bryan*, for the relator.

CLERKE, J.—1 deny the application for a mandamus on the ground that the board of trustees is vested with the power to conduct and manage the schools in their respective wards, that in this conduct and management the discipline of the said schools is exclusively under their control ; that to their direction consequently and necessarily is confided the power to decide questions relating to the violation of discipline, and that their judgment is conclusive.

· The application is denied, with $10 costs.

were no longer required, but no cause was therein expressed for her dismissal.

Her dismissal was filed in the clerk's office of the Board of Education on the 29th of June, 1861. Within twenty days (*i. e.*, July 17, 1861,) the relator filed with said clerk notice of her appeal from the action of the trustees to the Board of Education.

On the 20th November, 1861, the Board of Education, by a vote 23 to 4, reversed the proceedings of the trustees, and ordered the relator to be restored to her position, with pay from 24th June, 1861, as if no dismissal had taken place.

Her former position had meanwhile been filled by the appointment of another person; and the local board refused compliance with the decision of the appeal, claiming that the Board of Education had no jurisdiction over the appointment or removal of teachers, and therefore had no power to pass the by-law authorizing an appeal from the acts of the board of trustees, and claiming, further, that the appeal by the relator was not taken in proper form.

The relator therefore applied for a mandamus against the school officers to compel them to reinstate her in her position, and against the Board of Education, to compel them to pay her the arrears of salary. This application was denied by SUTHER-LAND, J., in March, 1864, and the relator appealed to the court at general term.

*William R. Stafford*, for the relator, appellant. — I. The board of school trustees only has the power, "under such general rules and regulations as the Board of Education may adopt," to contract with and employ teachers, and make other contracts for conducting and managing their schools; they have no power summarily to terminate those contracts at their own election. (*School Law of N. Y.*, § 10, subd. 2; 1 *Rev. Stat.*, 4 ed., 917, § 203, subd. 2.) The city superintendent examines, "under such general rules and regulations as the Board of Education may establish," into the qualification of teachers. (*School Law*, § 11, sub. 2.) And teachers must be licensed in their respective wards by him before they can act. (§ 9, subd. 10.) The teacher qualified when appointed is governed as much by the by-laws of the Board of Education as are the

trustees, and has a right to look to them for protection against violations of the contract by the trustees.

II. The Board of Education is the supervisory power, and the trustees, acting as its agents merely for the purposes prescribed in the act, are bound to proceed under the rules laid down by that governing and superior power. The trustees of 1861 were bound by the by-laws of 1860 so long as they continued in force. They had no right to make, nor had they in fact made laws of their own; and, in the absence of any on their part, the rule of the Board of Education, that, " upon the dismissal of a teacher, the board of trustees shall file with the clerk of the board a copy of the resolution, and notify the teacher of the cause of dismissal, and the teacher shall then have the right to appeal, &c.," bound them; this was a " general rule and regulation," and all the teachers of 1861 were for that year employed under it, and are entitled to its privileges. It became a part of the contract between teachers and trustees for that year.

III. The validity of the by-law was recognized by the trustees by their filing with the clerk of the Board their resolution dismissing the relator in conformity with it.

IV. The trustees cannot now contend that the appeal was irregular, or too late, after submitting to a hearing of it on the merits before the appellate board.

V. The Board of Education, not being the immediate contracting power, could not be subjected to an action at law for breach of contract in refusing to allow performance by the relator. Having, however, recognized the justice of her claim, there was no necessity of a suit against them. They are estopped when we ask payment up to the time of their restoration of the relator in conformity with their own decision. The claim is clear and undisputed, and even if the relator have another remedy, a mandamus would lie against the Board of Education to compel them to pay up to the time of their restoration. (McCullough *a.* Mayor, &c., of Brooklyn, 23 *Wend.*, 458; People *a.* Steel, 2 *Barb.*, 397; People *a.* Supervisors of Richmond, 20 *N. Y.*, 252.)

VI. The board of trustees are not a corporation, nor could any suit be maintained against them as such. The only remedy is by mandamus to induct the relator into her office, to audit her

claim for salary, and to insert her name on her pay rolls. The State makes it their duty (section 20 of School Act) to certify all expenses to the inspectors; the inspectors to the Board of Education, whose clerk's duty it is to audit and pay them. (§ 31 of art. 6 of *By-laws*; 1 *Rev. Stat.*, 923, § 222.) A mandamus lies to compel them to proceed and audit. (People *a*. Supervisors of N. Y., 22 *How. Pr.*, 71; affirming, S. C., 21 *Ib.*, 322; People *a*. Supervisors of Cortland, 24 *How. Pr.*, 119.)

VII. The mandamus to restore should have been granted, the facts justifying the exclusion not being clearly made out. The *onus* is with the respondents. The relator was duly appointed and acting; she was informed that her services were no longer required, without knowing the reason until a resolution, stigmatizing her character, was filed with the board, whose superintendent had conferred on her authority to act. Upon an investigation by the proper tribunal, that dismissal was held wrongful and unjust. The parties causing the wrong cannot arbitrarily refuse obedience, but should be compelled to award justice. (Titus *a*. Board of Police, 35 *Barb.*, 535.)

*A. R. Lawrence, Jr.*, for the trustees of the common schools of the Sixth Ward, respondents, objected that the rule that mandamus will not lie where there is a remedy by action, applied in this case (citing *Exp.* Firemen Ins. Co., 6 *Hill*, 243; Shipley *a*. Mechanics' Bank, 10 *Johns.*, 484; The King *a*. Bank of England, 2 *Doug.*, 524; Boyce *a*. Russell, 2 *Cow.*, 444; People *a*. Parker Vein Coal Co., 1 *Abbotts' Pr.*, 128; People *a*. Supervisors of Chenango, 11 *N. Y.* (1 Kern.), 563; People *a*. Mayor, &c., of N. Y., 25 *Wend.*, 680; *Exp.* Lynch, 2 *Hill*, 45; People *a*. Thompson, 25 *Barb.*, 73; *Davies' Laws*, 1045, § 2, subd. 11; *Id.* 1051, § 10, subd. 5; *Ang. & A. on Corp.*, § 2; *Kyd on Corp.*, 13); and argued that,

I. The relator did not comply with the provisions of the by-laws of the Board of Education, under which it is contended that a teacher has a right to appeal from the decision of the trustees of a ward dismissing or removing such teacher.

II. The by-law of the Board of Education allowing an appeal is void, and the relator had no right to appeal. (*Davies' Laws*, 1050.)

III. Even if the Board of Education had power to pass the by-law in question, the relator is not entitled to the remedy

which she seeks, for the reason that her application is premature.

IV. There is another person filling the office to which the relator claims to be entitled, and of which she demands the emoluments, and it is perfectly well settled that, in such a case, a mandamus will not lie in behalf of the party who claims to have been illegally removed. (People *a.* Stevens, 5 *Hill*, 616; People *a.* Mayor, &c., of N. Y., 3 *Johns. Cas.*, 79.)

The proper remedy of the relator is by a *quo warranto* to try the title of Miss Dunn, the present incumbent. (Cases *supra ;* *Crary on Spec. Pro.*, tit. Mand.)

*Thomas Boese* for the Board of Education, respondents, objected also that the relator's remedy was by action; and argued, in addition to some of the former points, that the relator was premature in applying for a mandamus, because no pay roll containing her name had been made out.

BY THE COURT.*—CLERKE, J.—The act of 1851 gives no appellate jurisdiction over the trustees of common schools in the exercise of their powers to dismiss teachers and other officers of the ward schools and ward primaries.

The statute only gives the Board of Education power to direct and prescribe general rules and regulations under which teachers shall be contracted with and employed.

The counsel for the trustees is right in saying that the board has no power to say who shall be appointed, and that, consequently, it has no power to say who shall be dismissed.

The by-law, therefore, under which the relator has made this application is without authority.

The order of special term should be affirmed with costs.

Order accordingly.

Present, LEONARD, CLERKE, and BARNARD, JJ.