(76 App. Div. 80.)

GOLDSTEIN v. NEW YORK UNIVERSITY.

(Supreme Court, Appellate Division, First Department. November 21, 1902.)

1. UNIVERSITIES.

A student in a law school, accused of sending an annoying letter to a lady student, during an investigation of the matter by the faculty, persistently affirmed, though warned of the serious nature of the charge he was making, that a fellow student had given him the letter to pass on to its destination. The first accused student was proven guilty of sending the letter, and was expelled for deliberate bearing of false witness against his fellow student. *Held*, that the expulsion was justified.

2. SAME—INVESTIGATION.

The student was entitled to no further investigation of the charge of lying.

Appeal from special term, Kings county.

Action by Louis Goldstein, an infant, against the New York University. From an order granting a temporary injunction against defendant (77 N. Y. Supp. 80), it appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

T. D. Kenneson, for appellant.
W. W. Chambers, for respondent.

PATTERSON, J. The plaintiff was a student in the University Law School, one of the departments of the New York University, an incorporated educational institution having a special charter, granted by the legislature of the state of New York in the year 1831, and amended in the year 1893. By that charter the government of the university is confided to a council, and by the thirteenth section thereof it is provided that the council shall have the power to appoint all the officers of the university, and to establish ordinances and by-laws not contravening the laws of the state of New York or of the United States. Pursuant to that authority, the university adopted certain by-laws. Subdivision 6 of the fourteenth chapter of such by-laws is in the following words:

"The power of suspension, dismissing, or expelling a student of the school is lodged with the faculty of the school, only; but the chancellor or dean of

a school may suspend a student pending the consideration of his case by his faculty."

The plaintiff was expelled from the law school by the faculty of that school, and thereupon he brought this suit, praying that it be decreed that the defendant give instruction and tuition to him "in the law subjects studied" in his class at the University Law School, as well as to permit his attendance at the lectures, and to allow him to have the use of the library attached to the law school. In his complaint, the allegation is made, upon special facts, that the plaintiff is without an adequate remedy at law. On that complaint and an affidavit, he applied for and obtained a preliminary injunction, by which the defendant, the New York University, its agents, servants, officers, employés, instructors, professors, etc., were, among other things, restrained and enjoined from interfering directly or indirectly with him in his attendance at the lectures of the University Law School. That restraint was contained in an order to show cause, and upon the return day named in that order the defendant duly appeared and presented affidavits in justification of the action of the faculty of the law school in the expulsion of the plaintiff. After hearing the parties, the learned justice by whom the motion was heard made an order "that the defendant herein, New York University, its agents, servants and employés, be, and they are hereby, enjoined and restrained, during the pendency of this action, from interfering in any manner whatsoever, directly or indirectly, with Louis Goldstein, the infant plaintiff herein, in his attendance at the lectures of the junior class of the University Law School." From that order the defendant appeals.

The plaintiff was duly admitted as a student or pupil to the law school. As such, he was entitled to all the privileges and advantages pertaining to that relation, and the unauthorized or unjustified deprivation of those privileges by the faculty of the law school or the authorities of the university would constitute a good cause of action. Sharswood, J., in College v. Kerr, 3 Brewst. 200. The relation existing between the university and the student is contractual. The plaintiff became a student in the defendant's law school through an invitation contained in a circular issued by the authority of the university, in which it was stated that tuition would be given to law students who were at least 18 years of age and of good moral character, and who would pay to the university the sum of $100 a year. He was accepted as a student. As was said at general term by Van Brunt, P. J., in People v. Bellevue Hospital Medical College, 60 Hun, 107, 14 N. Y. Supp. 490, when a student matriculates under such circumstances, it is a contract between the college and himself. That was a case in which the defendant was required to confer a degree upon a student. The court of appeals (28 N. E. 253) affirmed the judgment upon the opinion at general term. But obviously, and of necessity, there is implied in such contract a term or condition that the student will not be guilty of such misconduct as would be subversive of the discipline of the college or school, or as would show him to be morally unfit to be continued as a member thereof. The power of suspension or expulsion of students is an attribute of gov-

ernment of educational institutions. It was ample in this case. It was exercised by those to whom it was duly delegated by the by-laws enacted in accordance with authority conferred by charter and in evident good faith; and the question arising upon the record as it comes before us is whether, upon the facts shown, any right of the plaintiff was violated in the exercise of that power.

A young woman, a member of the class to which the plaintiff belonged, was annoyed by the receipt of a letter bearing what purported to be the name of the plaintiff as the sender, in which letter the writer expressed a desire to make her acquaintance; that he had tried to accomplish it through several of his friends, and "therefore thinking it would be uncurteous [sic] to present myself without your assent, I ask if I may do so in the class room or otherwise submit to any suggestion you make." That letter was typewritten, and was delivered to one Chirurg, another student in the class, and finally reached the young woman to whom it was addressed. She, being annoyed at the effort of the writer to force his acquaintance upon her, reported the matter to the dean of the law-school faculty, who thereupon sent for the plaintiff, interrogated him respecting the letter, and received the reply that some student, a stranger to the plaintiff, had asked him, in the hall of the school building, to deliver a letter addressed to the young lady; but he intimated that the letter was handed to him by one Pfeifer, although he would not then say positively that Pfeifer was the person. The plaintiff was asked whether he had ever written or signed a letter addressed to the young lady, and he replied that he had not. Meantime, and before the interview between the plaintiff and the dean, both Chirurg and Pfeifer had sent written communications to the dean; Chirurg stating that the plaintiff had asked him to bear a note to the young lady, saying that he was unacquainted with her, and would be much favored if Chirurg would convey the note; that he (Chirurg) was then requested to hand the note to another young woman to deliver to the young lady in question, and, knowing nothing of the contents of the note, he did as Goldstein had requested him. Pfeifer had also written to the dean, stating that the young lady to whom the note was addressed had told him that she had received a letter, purporting to come from one of the members of the class, which had been handed to her in the corridor; that she told him that the plaintiff had stated that Pfeifer handed the letter to the plaintiff, whereupon Pfeifer asked Goldstein whether he was the person who handed him the note, to which Goldstein replied that he was not.

Under the circumstances related, the dean brought the matter to the notice of the faculty. The plaintiff was duly cited to attend a meeting of the faculty, by a notice in the following words:

"You are hereby notified to appear before the faculty of this school at the faculty room in this building on Saturday, March 29, 1902, at two o'clock in the afternoon, to explain what, if any, connection you had with a certain letter addressed to a student in this class."

A similar notice for the same day and hour was served upon Chirurg, and also upon Pfeifer; that directed to the latter containing, in addition, the statement:

"Mr. Louis Goldstein, of your class, states that the letter in question came from you. If you are responsible for this letter, the consequences to you are likely to be serious."

The three parties thus summoned or notified appeared before the faculty at the time appointed, and an investigation was had of the whole matter. At that time the plaintiff accused Pfeifer of having handed him the letter, and also repudiated its authorship. He denied that he had written it or sent it, and then and there undertook to cast the blame upon Pfeifer. In the course of the investigation, it was made to appear that the plaintiff was the sender of the letter. The plaintiff had declared that it was handed to him in the hallway of the university building, outside of the library, by a man he did not know. The letter and the envelope in which it was inclosed were shown to him, and he stated that he did not write or sign the letter, and had never before seen it; further, that the young lady had never been the subject of conversation between him and any fellow student, other than Chirurg; and he then stated that he had become certain that Pfeifer was the man who handed him the note, and, although he was not sure of the fact when the dean first spoke to him upon the subject, yet he had become convinced of the identity of Pfeifer as the person who handed him the note. At that meeting one of the members of the faculty called the attention of the plaintiff to the serious nature of the charge he was making against Pfeifer, but he adhered to the statement that Pfeifer had handed him the note, and persisted in the charge. Pfeifer, who was examined, testified that he never handed a note to the plaintiff, had not caused it to be handed, nor signed it himself. Chirurg testified that for some time previously to the date of the meeting the plaintiff had asked him to deliver a note to the young lady, and virtually reaffirmed what he had stated in his letter to the dean. At this same meeting a test was made, which, in connection with other circumstances, leaves no doubt as to the authorship of the letter. It will be noticed that in the letter the word "uncourteous" is spelled "uncurteous." During the investigation before the faculty, the plaintiff, at the request of one of its members, wrote from dictation some sentences in which the words "courteous" and "uncourteous" were used, and in every instance the plaintiff made the same mistake in the spelling of the words as appears in the original letter. Pfeifer was subjected to the same test, and in every instance he spelled the words correctly.

At the conclusion of the investigation the plaintiff was expelled, not specifically on the charge of sending the letter or committing a breach of discipline in annoying a fellow student, but for deliberately lying, in giving false testimony in the course of an investigation relating to discipline and good order, and for willfully making a false charge against an innocent fellow student, Pfeifer, whereby he deliberately and intentionally endeavored to induce the faculty to believe that Pfeifer had done the acts under investigation, and about which the plaintiff had lied to the faculty. It scarcely needs argument to show that such a person would be unfit to remain a member of the law school, and that expulsion on such a state of facts would be justified. But it is said, and the learned judge below appears to

have placed his decision upon that contention, that the plaintiff was expelled without notice of charges against him, and without affording him an opportunity to be heard in his defense, or to confront the witnesses against him, or to know what they had said in his absence. So far from the investigation being made in the absence of the plaintiff, it would appear that he was present. The offenses for which he was expelled were directly connected with the subject of the investigation which was being pursued while he was present. They grew out of, and were directly related to, that subject. If he were entitled to a hearing, he had it then and there. The offenses were committed in the presence of the faculty. One of them arose out of the plaintiff's charge, made and examined, against a fellow student; and he was punished for making that false charge, which of itself would justify the expulsion. There was nothing in the situation requiring that the plaintiff should be notified anew of the charges for which he was expelled, or which required a new proceeding. The offenses having been committed in the immediate presence of the faculty, they were at once examined, and the parties heard. The plaintiff had every opportunity of making any explanation that would exculpate him from the charge of lying, or relieve him from that of bearing false witness against his fellow student. Our attention has not been called to any law or rule or regulation which required any form or time of notice, or any particular method of trial before the faculty of this university. Had the plaintiff, in the presence of the faculty, committed a criminal or an immoral act, or insulted his professors, or been guilty of conduct destructive of the discipline and good order of the school, and had he at once been called upon to explain, and been given an immediate hearing, can it be contended that his rights would have been impaired, or that he did not have opportunity to protect himself? Here was a full investigation, at least of the charge which he himself made before the faculty against his fellow student; and that charge having been fully investigated in his presence (for he does not assert that he was not present during the whole investigation), and found to be false, sufficient ground existed for his expulsion.

The order appealed from should be reversed, and the motion based upon the order to show cause denied. As the action is instituted, no costs can be allowed. All concur.