MELVILLE F. TAYLOR, an Infant, by JOHN ROBERT TAYLOR, His Guardian ad Litem, Respondent, *v.* CHARLES ALEXANDER ROBINSON and JOHN CALVIN BUCHER, Appellants.

Second Department, November 25, 1921.

Schools — pupils and discipline — action for damages suffered by reason of plaintiff's expulsion from defendants' military academy for insubordination — when ·suspension or expulsion is justifiable — future status of pupil respecting his relations with school lies with school authorities — erroneous instructions — complaint dismissed.

In an action for damages claimed to have been suffered by reason of plaintiff's expulsion from defendants' military academy, it appeared that as the result of an order promulgated by the faculty of the institution respecting study, the plaintiff, together with his brother officers of the cadet battalion, of which he was major, tendered their resignations in protest. At the next formation, the commissioned officers absented themselves and gathered in plaintiff's room from whence shouts emanated when the formation resulted in confusion. A faculty meeting was held; the boys were given an opportunity to withdraw their resignations and upon their refusal they were indefinitely suspended. The office of cadet major was abolished; the other boys were ultimately taken back and, because it was believed his presence at the institution would interfere with the discipline, the plaintiff was told he was not wanted.

*Held,* that the plaintiff was justly and legally suspended, and that thereafter he stood in the same relation toward the school as if he had never been a pupil therein and the defendants could accept him as a pupil, if they saw fit, without any conditions, or, if they saw fit, they could impose conditions or decline to accept him at all.

Where the trial court in its charge to the jury had already characterized the act of the plaintiff as an act of insubordination justifying suspension or expulsion, it was error to subsequently charge that the plaintiff must be treated the same as the other pupils who had been suspended or a good reason given for discrimination, since the charge permitted the plaintiff to recover upon a cause of action which he did not plead and which has no legal basis, and, therefore, the complaint should be dismissed.

APPEAL by the defendants, Charles Alexander Robinson and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on or about the 5th day of February, 1921, upon the verdict of a jury for $10,000; also from an order, entered in said clerk's office on the 19th day of January, 1921, denying defendants' motion to set aside the verdict and for a new trial made upon the minutes upon the condition that the plaintiff stipulate to reduce the verdict to $5,500, and also from a further order, entered in said clerk's office on the 31st day of January, 1921, denying defendants' motion to set aside said verdict and for a new trial made upon the minutes, the plaintiff having stipulated to reduce the verdict to $5,500.

*Richard Ely*, for the appellants.

*James G. Purdy*, for the respondent.

JAYCOX, J.:

The plaintiff was a student in a school conducted by the defendants, known as the Peekskill Military Academy. At the time of the occurrences involved in this action this school was under the supervision of the Federal government through an officer detailed for that purpose. The plaintiff entered the defendants' school in the fall of 1914 and remained until January 27, 1919. For some time prior to the last-mentioned date the seniors and juniors resident in the building known as the James B. Ford Upper House were allowed to study in their rooms. The younger boys and those who had not acquired regular habits of study were obliged to prepare lessons in the general study rooms under the supervision of the teachers. On the 27th day of January, 1919, the faculty of the school adopted a rule by which the seniors, until further

notice, were required to do their studying in the general study rooms.

The scholars in this school are, for the purposes of training, considered a battalion and are divided into three companies. These companies are officered by cadet officers, divided into commissioned and non-commissioned officers. The plaintiff herein held the highest office in the school, being cadet major. The plaintiff was also president of his class, captain of the football team, catcher on the baseball team and president of the senior council — unquestionably the most prominent scholar in the school.

Immediately upon the promulgation of the order canceling the privilege of the seniors to study in their rooms, a resignation was prepared and signed by all of the commissioned officers of the school and presented to the military officer in charge at the school. The next formation under the military system in vogue at the school was the battalion formation for mess. Although it appears in the evidence that the plaintiff did not originate the idea of resigning and was not the first one to sign the resignation, his name appears first thereon and was followed, practically in. the order of their rank, by the signatures of the other officers. When the battalion formation was attempted a number of the student officers went to the room occupied by the plaintiff and two other officers and looked out of the window at the attempted formation. This formation resulted in confusion and during this time shouts emanated from the room occupied by the plaintiff and his brother officers. A meeting of the school faculty was then held and all of the officers were given an opportunity to withdraw their resignations, but they all declined to do so. At least one of the officers who had resigned was willing to withdraw his resignation, but was dissuaded from doing so by the plaintiff and some of the others. The faculty then indefinitely suspended the plaintiff and the other officers who had resigned. The plaintiff's father was immediately notified by telegram of the action taken by the faculty and that a letter would follow. After this some negotiations were had with the plaintiff's father, attempts were made by him to meet Mr. Robinson, one of the defendants, in New York, and at last the father went to

Peekskill, saw Mr. Robinson and the other members of the faculty and, in the course of this interview, the elder Mr. Taylor expressed some doubts as to his desire to have his son return to the school. He was informed that the office of cadet major had been abolished and at that time Mr. Robinson was apparently of the opinion that the plaintiff would not desire to return to the school in the capacity of private. The following day the plaintiff went back to the academy and was told by the defendants, with the approval of the United States army officer stationed at the school, that they did not want him to come back there as a private because it would interfere with the discipline of the school. All the other boys who resigned their commissions were ultimately taken back into the school. The plaintiff brings this action to recover the damages which he claims to have suffered by reason of his expulsion from the defendants' school.

The action is based upon the theory that the plaintiff was illegally and unjustifiably expelled. The case was, however, submitted to the jury upon the theory that in reinstating the other boys who had resigned and declining to reinstate the plaintiff he had been discriminated against. The court held that if at the time when the plaintiff presented himself for readmission to the academy the defendants declined to admit him upon the ground that the office of cadet major had been abolished, upon the trial they were precluded from giving any other reason, and the jury were entitled to say whether it was a reasonable exercise of their power if the defendants declined to readmit the plaintiff upon the grounds stated. The right and duty of the faculty of a school of this character to maintain discipline and order is too clear for argument. It is supported by all the decisions in which the power to repress insubordination and punish misconduct has been brought into question. In *Goldstein* v. *New York University* (76 App. Div. 80, 83) it was said: " But obviously and of necessity there is implied in such contract a term or condition that the student will not be guilty of such misconduct as would be subversive of the discipline of the college or school, or as would show him to be morally unfit to be continued as a member thereof. The power of suspension or expulsion of students is an attribute of government of educa-

tional institutions." In *People ex rel. O'Sullivan* v. *N. Y. Law School* (68 Hun, 118, 121) the court said: " That there should be some power vested in the faculties of schools and colleges to repress and punish such conduct, will be conceded by all. It cannot be that a student, having passed all examinations necessary for a degree, can, before his graduation, excite disturbance, and threaten injury to the school or college, without being amenable to some punishment. No course would seem open except to forthwith expel him or refuse his degree." (See, also, *Samson* v. *Trustees of Columbia University,* 101 Misc. Rep. 146; affd., without opinion, 181 App. Div. 936; *Kabus* v. *Seftner,* 34 Misc. Rep. 538; *Starr* v. *Liftchild,* 40 Barb. 541; *People ex rel. McHugh* v. *School Officers,* 18 Abb. Pr. 165; *Kentucky Military Institute* v. *Bramblet,* 158 Ky. 205; *Gott* v. *Berea College,* 156 id. 376.) That the defendants possessed this power to discipline or expel the plaintiff is expressly recognized by the court in its charge. Speaking of the resignation, the court said: " That was an act of insubordination, and cannot be justified by anyone. They did a wrong act, and the faculty, the defendants, had a right after such an act of insubordination to exercise such discipline as they saw fit and proper under the circumstances. They had a right to suspend these students indefinitely or to expel them." The court thereafter correctly instructed the jury that the expulsion of the plaintiff was justified.

The plaintiff having been justly and legally suspended, he stood in the same relation toward this school as if he had never been a pupil therein. The defendants could accept him as a pupil, if they saw fit, without any conditions, or, if they saw fit, they could impose conditions or decline to accept him at all. The trial court, however, was of the opinion, and so charged the jury, that the plaintiff must be treated the same as the other pupils who had been suspended or a good reason given for the discrimination. The court charged the jury:

" They say that because they had abolished the office of cadet major there was no other position as an officer open, and that they refused to take him back because; having once exercised authority over the other boys, they would not accept him as a private for fear that he would not obey the rules of the institution.

"I am going to submit that question to you, gentlemen, as to whether or not that was a reasonable regulation, whether it was a usual punishment, whether it was subversive of the contract under which that boy was attending that institution; because I charge you, gentlemen, that when an individual enters an institution of learning which has an extended period of study over several years, and if he pays the charges and obeys the rules of that institution, that there is an implied contract that he will be permitted to finish the course of prescribed study and receive the documents or diplomas or certificates that come therefor, unless he by his own conduct has forfeited that right or privilege. Therefore, I submit the question to you, gentlemen, whether the refusal to receive him back after they had abolished the office of cadet major was a fair test. Was it a reasonable thing? Because, gentlemen, had they received him back as a private, and had he violated the rules of the institution at any time thereafter, they had the right of expulsion or indefinite suspension, which amounts to the same thing and are the same thing. I submit to you, gentlemen, whether that was a reasonable exercise of the right that they had of ruling and governing that institution. They should treat this man, or this boy, the same as they treated the other members unless they had assigned some reason, which they did not for past misconduct."

In this submission to the jury the learned judge very evidently forgot that he had already characterized the act of the plaintiff as an act of insubordination justifying suspension or expulsion. Therefore, the plaintiff came within the exception in the quotation above given, "by his own conduct" he had forfeited the right and privilege of remaining at this institution of learning. The plaintiff has, therefore, been permitted to recover upon a cause of action which he did not plead and which has no legal basis. The motion for a dismissal of the complaint should have been granted.

The judgment and orders appealed from should be reversed, with costs, and the complaint dismissed, with costs.

BLACKMAR, P. J., MILLS, RICH and MANNING, JJ., concur.

Judgment and orders reversed, with costs, and complaint unanimously dismissed, with costs.