# THE BALTIMORE UNIVERSITY *vs.* GEORGE A. COLTON.

*Mandamus to Compel Re-Instatement of Student Wrongfully Dismissed From a School.*

When a student is wrongfully dismissed from a school, without notice and in violation of the contract between the parties, he is entitled to a writ of *mandamus* directing his re-instatement.

The fact that a petitioner for *mandamus* has a remedy in equity by bill for specific performance is not a reason for refusing the writ.

Petitioner matriculated as a student in a Law School in 1896, paid part of the tuition fees and signed a paper agreeing to pay the balance in installments. The secretary of the school told him that the cost of the entire course would be $125; that this could be paid at any time before graduation and that he had the right to attend the lectures until he succeeded in passing in all the subjects. A usage also existed which permitted students to attend the school for three or four years or longer without the payment of additional fees, although the regular course was of two years duration. Petitioner attended the lectures with irregularity until 1900 when he had passed in eighteen of the twenty subjects required and paid $37 on account of the tuition fees. In 1900 an entire change took place in the teaching faculty, and after that petitioner attended some of the lectures and was informed by the secretary that credit would be given him for his former marks. In the following year he was notified that he would not be recognized as a student or allowed to take the final examinations and graduate because the faculty did not know him. No charges were made against him or opportunity to explain afforded. Petitioner offered to pay whatever sum he owed and applied for a *mandamus* to compel his re-instatement in the school. *Held,* that the petitioner was wrongfully dismissed and that he is entitled to the relief asked for, since an action of damages for the breach of the contract would be an inadequate remedy.

Appeal from Baltimore City Court (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Albert S. J. Owens* and *George A. Solter,* for the appellant. The rights of the petitioner, if he has any, arise out of a

contract with a private corporation, and cannot be enforced by the action of *mandamus.* 19 *A. & E. Ency. Law*, (2 ed.) 742; *Clark* v. *Md. Institute*, 87 Md. 643.

The petition alleges an oral contract, partially based upon certain alleged uses and customs of the school with regard to the duration of time a student could attend, and take the examinations, and also as to the time of the payment of the fees charged by the school. The prayer then asks for a writ of *mandamus* commanding the defendant "to restore to him his full rights and privileges as a student of said school, and to allow him full credit for the marks awarded him by the preceding faculty, and for all payments made by him as aforesaid."

The Court directed the writ "*to issue as prayed.*" Such a writ would not advise the respondent of the exact duty due by it to the plaintiff. It would furnish no measure of the respective obligations of the parties. Is this defendant to take back the plaintiff and allow him to attend lectures and take examinations on the two subjects in which he has failed, once, and then if he fails, dismiss him from the school? Or is the plaintiff to be permitted to take these lectures in the event of his failing to pass his examination, until the plaintiff shall grow weary, or the life of the defendant corporation expire by limitation of law? When is the meagre compensation of the defendant, for the perpetual services rendered the plaintiff, to be paid by the plaintiff? Neither the prayer, nor the order of Court directing the *mandamus* to issue, shed the slightest ray of light upon these pertinent questions. How is this plaintiff to attend these lectures? Is he to attend them in the manner heretofore, "as he could?" that is, periodically and spasmodically, or is he to attend them regularly? Is he to be the only student of this school, free from all regulation, restraint or control?

It is a well settled rule applicable to *mandamus* that the range of action required of the respondent cannot be left to indiscriminate outside ascertainment, nor can it be required to look *dehors* the writ to ascertain its duty. *Merrill on Man-*

*damus*, sec. 260; *Florida Central, &c., R. R.* v. *Tavares*, 20 L. R. A. 419.

The contract to make Colton a lawyer, and to give him the right to attend the Law School, and take the examinations *"indefinitely,"* is a contract for personal services of an uncertain duration. It is a contract to permit Colton to attend the Law School "as long as he liked," which cannot be enforced. *Nelson* v. *Kelly*, 91 Ala. 569; *Firth* v. *Ridley*, 33 Beavan, 516; *Mowers* v. *Fogg*, 45 N. J. Eq. 120.

The contract alleged in the petition is void for want of mutuality.

The plaintiff being in default is not entitled to recover.

The usages and customs sought to be established form no part of the contract. (*a*) Because the usage endeavored to be shown was a mere indulgence, an act of accommodation, which even though found cannot be held to constitute a usage entering into the contract of the parties. *Citizens' Bank* v. *Grafflin*, 31 Md. 507.

(*b*) Because the usages sought to be shown are inconsistent with the written contract. *Baltimore Baseball Co.* v. *Pickett*, 78 Md. 376; *German Savings Bank* v. *Renshaw*, 78 Md. 475. Mr. Colton signed a written contract for a certain session, viz: "The session of 189–." This patent ambiguity was explained by Mr. Bryant to mean "the term of the School," (two years). This so-called usage would be contradictory to this contract. Likewise, the usage for the student to pay the money "when he got it," would contradict the contract.

*S. Gross Horwitz*, for the appellee.

The University contended, with reference to the contract as established first, that it was void, because too indefinite as to the time during which the shool would be obliged to impart instruction to the petitioner ; and secondly, that, if not void, it yet had been rescinded and discharged by the failure of the petitioner to pay the entire $100 installments of $5 per month. In amplification of the first contention, it was argued that there was no sufficient "mutuality" in the contract, for, though

$100 was to be paid by the petitioner, there was no certainty as to the duration of time that the University would be obliged to afford him instruction. "If he could, contended they, continue at the school until he had passed in all subjects, it might well be that he could continue for ever." But, surely, it would be quite competent for the University to agree that, in consideration of $100, instruction should be delivered to the petitioner for the entire residue of his life. The Court will never concern itself with the adequacy of the consideration for a contract. *Foster* v. *Ulman*, 64 Md. 526.

Indeed even had the University engaged to allow the petitioner both to attend classes until he should be able to graduate, and also to postpone payment of the tuition fees until he had passed in all branches, there would be no such indefiniteness or want of mutuality as to avoid the contract. The argument that a student might under such an agreement attend lectures until he had learned everything taught in the school, and then exempt himself from liability for fees, by the simple device of never taking the final examinations, is wholly destitute of merit. For, by all the authorities, the University could proceed to recover its fees should the student occupy an unreasonable time in the completion of his studies, or should he omit for an unreasonable time to take the final examinations. *Pistel* v. *The Imperial Insurance Co.*, 88 Md. 552.

The contract in this case does not fall within that class of contracts in which non-payment of an installment of money by one party, entitles the other party to declare the contract rescinded. Moreover, the University has, by its repeated acts and admissions, waived the right to rescind. A wide difference exists between contracts in which the agreement is to furnish commodities in certain installments, each installment to be paid for on delivery, and contracts such as this, where the consideration is an entire sum, to be paid in installments, however, covering a period shorter in duration than the period during which the services are to be rendered, and where, therefore, each payment represents not merely the value of the services furnished down to the time of payment, but also part payment

of those to be furnished in the future. In this contract, the covenant to pay in installments is an independent covenant, a breach of which affords not the right to rescind, but only the right to sue. *Franklin* v. *Miller*, 4 Adol. & Ellis. 605.

When petitioner matriculated he then paid $5 on account of tuition fees. Had all the remaining installments been regularly paid, the whole amount would have been settled by June, 1898. Down to that date, however, the petitioner had paid only the first installment, yet the University continued long after, to recognize him as a student, allowing him to continue at the lectures, and to take examinations. Failing to rescind during the nineteen months in which the money was to be paid, it obviously elected to hold the petitioner to the contract, and could not rescind afterwards. In the analogous case of a sale of goods for cash, it is competent, says this Court, for the vendor to waive the cash payment by an unconditional delivery of the goods, without a concurrent demand of the money at the time the delivery is made. *Powell* v. *Bradlee*, 9 G. & J. 277. "In such a case the condition of payment simultaneously, would be waived, and the right of property would pass."

A member of a University resembles most nearly, perhaps, a member of a beneficial association. In such an association a person is admitted to membership upon payment of certain fees. Payment of other fees entitles him to other privileges, namely to sick and to death benefits. But he is not entitled to those benefits unless he has paid his dues, or, as it is phrased, is "in good standing." Mere non-payment of dues, however, does not work a forfeiture of membership, unless there is an express by-law to that effect. And the decisions go so far as to hold that, even if there be such a by-law, no expulsion can be decreed until after charges are preferred and an opportunity given to the member to defend. *Chamber of Commerce* v. *Green*, 8 Colo. Apps. 424; *Medical Society* v. *Weatherly*, 75 Ala. 229; *Commonwealth* v. *Penna. Beneficial Assn.*, 2 S. & R. 141.

The situation of a matriculate of a University resembles

also the situation of a person admitted to a fair ground. Admission carries with it the enjoyment of certain privileges, but the enjoyment of other privileges requires other payments. Failure, however, to make other payments does not justify an expulsion from the grounds, but only an exclusion from the other privileges. Here, complete sentence of deprivation has been passed against the petitioner, that is, all rights of membership have been taken from him for no conceivable reason other than an alleged omission to live up to a contract for the payment of certain lecture fees. But these fees the petitioner offered to pay in full, as averred by the petition, and admitted by the answer. It is urgently submitted that nonpayment of these fees could, at utmost, deprive the petitioner of no right except that of attending lectures until payment is made.

*Mandamus* is the true remedy. The process was introduced for the very purpose of supplying deficiences in the law. Whatever its limitations might have been as respects individuals, and voluntary associations, it was always available against corporations, mere creatures of statute. The Courts, says LORD MANSFIELD, "certainly have jurisdiction over corporate bodies to see that they act agreeably to the ends of justice. There is no doubt that where a party has a right and has no other specific legal remedy, the Court will assist him by issuing this prerogative writ (*mandamus*), in order to his obtaining such right." *Rex* v. *Askew*, 4 Burrows, 2186, 2188.

But the ancient strictness with reference to the writ has now all been swept away, and the scope of its usefulness widely extended both by statutory enactment and by a liberal construction of the law. In its origin it was a highly summary process, in which there were no pleadings, no proof, no jury trial, no damages, nothing in short but an *ex parte* petition filed by the relator, and upon which, if the facts averred were deemed by the Court sufficient to sustain the application, the writ issued ; and, to the writ, no return was acceptable except a certificate of obedience, or a statement, under oath, swearing away the facts of the petition. This, however, has been altered by the

Code. The pleadings are now full and regular to final issue. A jury trial is had, unless waived by both parties ; and full damages are awarded, as in other actions. *Code*, Art. 60, secs. 2–7. Moreover by an Act passed in 1888, and by the decisions of this Court, the remedy has been extended so as to reach practically every case except an action for the recovery of a debt. For by the Act of 1888, codified in Art. 16, sec. 80 (Code of 1902), Art. 16, sec. 69 (Code of 1888), it is prescribed that it shall be no answer to an application for the writ that the petitioner has an adequate remedy in damages, unless the defendant establishes to the satisfaction of the trial Court that he has property from which damages can be made. *Conner* v. *Groh*, 90 Md. 684. And since the decision in *Hardcastle* v. *Delaware Ry.*, 32 Md. 35, it has been the settled law of this State that to a petition for *mandamus* it is no answer to say that the petitioner has a remedy in equity.

The petitioner has attended the University as faithfully as his duties would permit ; the University was especially designed to administer instruction and to award diplomas to young men in needy circumstances ; and having in four years passed in all subjects, two only excepted, he is entitled to his diploma upon passing in the two subjects remaining ; and *mandamus* is the proper remedy. Code of 1902, Art. 16, sec. 80 (being sec. 69 of Code of 1888.) *People* v. *Bellevue Hospital*, 60 Hun. 107, affirmed in 128 N. Y. 621; *Jackson* v. *State*, 57 Neb. 183, 189; *Hill* v. *McCauley*, 3 Penna. County Co. Reps. 77. (In this case many authorities are collated and reviewed.) *Commonwealth* v. *German Society*, 15 Pa. St. 251; *The King* v. *Chancellor of Cambridge*, 1 Strange, 557; *Commonwealth* v. *Penna. Beneficial Assn.*, 2 S. & R. 141; *Medical Society* v. *Weatherly*, 75 Ala. 248; *Hardcastle* v. *Delaware & Md. Ry.*, 32 Md. 35; *People* v. *The Medical Society*, 24 Barb. 570; *Angel & Ames, Corporations*, s. 420; *Clark* v. *Bishop of Sarum*, 2 Strange, 1082; *Weber* v. *Zimmerman*, 23 Md. 45.

FOWLER, J., delivered the opinion of the Court.

George S. Colton was a student at the Law School of the

Baltimore University. The faculty notified him at the close of the session of 1900–1901, that they would not permit him to take the final examinations and refused to consider him as a candidate for graduation. Whereupon he filed in the Baltimore City Court a petition for *mandamus* against the Baltimore University.

The petition alleges that the defendant University duly organized and established the Law School, and that the rules adopted for the government and regulation of said school provided that no preliminary examination should be required for matriculation, that students should be admitted without distinction of sex, that the matriculation fee should be five dollars, that the course of study should be divided into branches, junior and senior; that a diploma fee of $20 should be payable on graduation and that the degree of Bachelor of Laws should be conferred on those students who should pass the intermediate and final examinations, submit the usual theses and pay the said fees and all tuition fees; that the school was intended to offer special inducements to young men who should desire to occupy themselves in business during the day, and, therefore, lectures were given wholly during the evening hours; that in the year 1896, the petitioner was a young man entirely without means, obliged to support himself and assist in the support of his sister by his daily exertions; that having aspirations for the bar he resolved to enter the said Law School of said University and to pursue his studies as diligently as the discharge of his other duties might permit; that he did enter said school, was duly matriculated; and attended lectures; that the nominal duration of the course of instruction was two years, but, that out of regard to the tax on the time of students busily engaged during the day there was the privilege of attending classes during such length of time as might be required by them to pass in all branches; that the only cash payment was the matriculation fee and that a uniform usage of the University entitled students to postpone payment of the other charges until graduation; that Howard Bryant, the Secretary and Treasurer of the sa

school, notified the petitioner that the entire tuition charge would be $100, which he might pay at anytime before graduation; that the sum of $47 on account of tuition fees had been paid by him on the faith of said representations and that the same had been accepted by said school—the last of said payments being on the 3rd June, 1899; that the petitioner had attended the lectures, and had down to the year 1900—a period of four years—passed in all subjects there taught, except two; that during the session 1900–1901, a complete change took place in the faculty, but that he continued to attend lectures under the new faculty until May, 1901, when, as we have seen, he was informed he would be no longer recognized as a student, and would not be allowed to graduate; that he made application to the faculty to reinstate him and offered to pay any sum they might think due by him; but although no charges had been made against him, his application was refused on the ground that he had not attended lectures and faculty did not know him.    The defendant answered this petition admitting that no charges had ever been made against the petitioner; that he had always borne himself courteously and becomingly as a student; that he had offered to pay all sums which might be due by him, and that he had been denied the privileges of the Law School because he was not known to the faculty, had attended few of their lectures and had not been regarded by them as a student.    The answer denies the existence of the general usage set up in the petition, but admits that it is true that the payment of the tuition fee is sometimes deferred at the request of deserving, impecunious students, in the discretion of the faculty, and denies that this privilege was ever accorded to the petitioner.    The answer further alleges that the petitioner entered the Law School five years ago and failed to pass the examinations, that it was never contemplated by the University that students should pursue their studies piecemeal and extending over such a long period; that the petitioner abandoned the course of study for several years, and having failed to pass examinations and not having paid the tuition due, the writ should not issue.

Issue was duly joined and the case was tried before a jury. After all the evidence was in on both sides the defendants submitted a prayer asking the Court to withdraw the case from the jury. This prayer was refused, and the prayer of the plaintiff was granted. The judgment was against the defendant and the writ was ordered to issue as prayed. The defendant has appealed.

The defendant excepted to the refusal of its prayer asking the Court to withdraw the case from the jury and it excepted generally and specially to the granting of the plaintiffs prayer and finally excepted to the overruling of its motion *non obstante veredicto* not to direct the issuing of the writ. But all these exceptions present substantially the same questions.

We will, therefore, consider the first exception in order, and in doing so we will be compelled to examine all the testimony offered by the plaintiff to ascertain if it is legally sufficient to entitle him to recover.

The first witness on the part of the plaintiff was Mr. Howard Bryant, who testified that he was one of the professors of the Law School and its general agent for the purpose of transacting business with the law students and applicants to become such. He was also a director and secretary and treasurer. The plaintiff was matriculated in 1896 and his name appears in the catalogue of the University; the school was for needy young men; if the students did not have the money and wanted indulgence that indulgence was given; student would not be turned away if he failed to graduate in two years, and had the right to remain until he succeeded in passing; tuition fees were $100, $5 for matriculation and $20 for diploma; at one time students were allowed, if they could pass all examinations and had paid all fees to graduate in one year; but later students were required to attend two years at least; fees were not increased if the student remained longer than two years; that he as treasurer received from the plaintiff in June, 1899, two payments, amounting to $37 on account of tuition; that the old faculty of which he was a member resigned in 1900, and the same year the new faculty was appointed; and that if the plain-

tiff had passed his examination and paid the balance of his fees and was otherwise qualified we would have graduated him. On cross-examination he said that if a student matriculated for three years and did not pass during the three years he could go on for another year or possibly two years. "How long he could go on I do not know; there was no rule, but it was understood by the faculty and the students understood it I think."

The petitioner testified that he matriculated in October, 1896; at that time he was working for the Baltimore Bargain House, that he had nothing except what he worked for; supported himself and afflicted sister; that wishing to become a lawyer he called on Mr. Bryant the agent, &c., of the Law School, was informed by him it would cost $125; told him he did not have the money and he said that was not necessary, just so the money was paid before graduation, and it made no difference whether I graduated in one, two or three years or whenever I graduated; attended lectures up to 1900; had then passed eighteen subjects out of twenty and had paid $47 on tuition and $5 matriculation fee; then there was trouble and the faculty resigned, and having paid $47 and gone so far through the school, I called on Dr. Biedler, Secretary of the University; told him what examinations I had passed and how much I had paid; he said that was all right, just to remain with the school and that he would give me credit for my marks and what I had paid, and told me tell the other students what he had told me and not to let any of them go to any other school if possible; gave me a paper that new professors would be appointed; when new professors were appointed and the school opened, went down and started in; received notice from one of the professors which gave me access to Bar Library; attended lectures on subjects on which he was deficient and also a number of other lectures; at the end of the term was about to take his examination when one of the professors refused to recognize him and then on the 18th May, 1901, received the note from the Secretary of the Law School informing him that he was not a student of the

school; that the usage with reference to duration of the course of studies was that if you were able to do so you could graduate in one year or you could take as long as you wanted; the usage in regard to payment of tuition charges was that they had to be paid before you graduated; that a letter from Mr. Clendinen (which was read), was addressed to the plaintiff to the effect that the former students of the University who continued to prosecute their studies with the then present faculty will be allowed credit for all the marks theretofore awarded and also credit for all money paid by them ·to the former faculty.    There are several other witnesses who testified as to the usage to allow students to remain until they had graduated.    Mr. Fluegel testified that in his class, he being a graduate of the Law School, there were some who remained four and four and a-half years, and that the usage with reference to the payment of the fees was that the matriculation had to be paid at once, but that the remaining fees could be paid at any time before graduation, because the students were supposed to be men of little means working in the day time and studying at night.

During the examination of the plaintiff the defendant produced one of its books containing an agreement signed by the plaintiff agreeing to become a member of the University Law School for the session 189– and promising to pay as tuition the sum of $100 and $5 for matriculation.  This entry also shows that the plaintiff at the time he entered paid the matriculation fee and $5 on account of tuition.    The balance of tuition was to be paid at the rate of $5 per month, and all payable before graduation.  That is all.  There is nothing in reference to the duties to be performed by the school.  What it actually did we learn from the testimony, namely, that the usage was not to exact the payments as prescribed.

If the foregoing testimony be true, and for the purposes of the question we are considering, namely its legal sufficiency, *that* is conceded, there can be no doubt, we think, that the plaintiff was entitled to a verdict.    It shows that he became a duly matriculated member of the University ; that, although

there was an agreement on his part to pay the balance of his tuition ($95) in monthly installments, yet not only in his case this agreement was waived but a general usage was established permitting any students to pay at the time of graduation. Not only so, but while it appears that a term consisted of two sessions of nine months each, yet if a student did not or could not graduate in that time a general usuage was established extending the term three, four, four and a-half years and even longer. The plaintiff testified that one of the faculty said this term might continue ten years and we find no contradiction of this testimony, although there was ample opportunity to do so ; but whether contradicted or not, its truth is conceded. It was conceded also by the defendant that it dismissed the plaintiff without making any charges and without giving him a chance to make any explanation because he had not been regarded by them as a student, had attended few of the lectures and was not known to the faculty. The evidence of the plaintiff, however, which is conceded to be true is that he not only attended all the lectures it was possible for him to attend, but that one of the new professors gave him a card recognizing him as a member of the school, and that he had paid and the defendant had received his money, that no further sum had ever been demanded, but that he had offered to pay any sum the defendant might think he owed. There is nothing even if we include the testimony of the defendant to show that irregularity in attending lectures was a cause for expulsion or dismissal. Indeed the school seems to have been regulated for the convenience of the impecunious but ambitious young men who had to work elsewhere during the day and often at night. And for this reason the usage was established allowing the term to extend three, four and four and a-half and more years instead of two years as originally fixed. It follows, therefore, we think, that the plaintiff was wrongfully dismissed.

Under such circumstances has he a right to *mandamus* to be restored to the rights and privileges of membership of the Law School to which it must be conceded he was once entitled and of which he has, it is conceded, been deprived *without notice*.

Of course if one voluntarily becomes a member of an incorporated society or association whose by-laws provide for expulsion for specified causes the right of amotion is clearly established in the corporate body and may be duly exercised in the manner and for the purposes prescribed, (*High on Ex. Leg. Rem.* (3rd ed.), sec. 292); but here there is not only an expulsion without notice, but it does not appear that the defendant corporation had ever enacted any by-laws on the subject, or that if any, they were complied with.    Want of notice *has* always heen regarded as sufficient ground for invoking the aid of *mandamus* in cases of membership in corporations organized for the purpose of business or profit.    Sec. 295, *High Ex. L. Rem.*    And now it is generally held that the same rule also applies to the restoration to membership in a private corporation when no pecuniary interests are involved. *Merrill on Mandamus*, sec. 158–167—so that whether the Law School or University be regarded as organized for profit or not, in either case *mandamus* is the proper remedy.    But in addition to this it is clear the plaintiff has no other adequate remedy at law.    He asks and seeks not damages but a restoration to his right to attend the school, listen to the lectures, and, finally to pass the required examinations and thus obtain a diploma, with the degree of Bachelor of Laws.    An action for breach of contract cannot, therefore, be considered an adequate remedy.    Nor can he have, as suggested, a bill for specific performance, so long as he has an adequate remedy at law to wit, the writ of *mandamus*.    It is not, however, a sufficient answer that the plaintiff might have redress in a Court of equity.    *Hardcastle* v. *R. Rd. Co.*, 32 Md. 35.

From what we have said it follows that the plaintiff's prayer was properly granted, for it merely instructs the jury that if they believe the testimony which we have rehearsed in the former part of this opinion the plaintiff is entitled to a verdict. And, as we have already said, *mandamus* is the proper remedy.

The motion *non obstante* rests upon the same grounds the defendant relied on to support its demurrer to the evidence, and these we have already considered.

*Order affirmed with costs to the appellee.*