747 A.2d 205

Robert J. HARWOOD, Jr.

v.

JOHNS HOPKINS UNIVERSITY.

No. 5457, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 2, 2000.

---

Jane E. Brockman, Kingston, RI (Michael E. Kaminkow and Schulman, Treem, Kaminkow & Gilden, P.A., on the brief), Baltimore, for appellant.

Gerard D. St. Ours (Estelle A. Fishbein and Frederick G. Savage, on the brief), Baltimore, for appellee.

Argued before BYRNES, ADKINS and MARY BETH McCORMICK (Specially Assigned), JJ.

ADKINS, Judge.

We are asked in this appeal to decide whether Robert J. Harwood, Jr., appellant, is entitled to receive a diploma from the Johns Hopkins University ("JHU"), appellee. JHU refused to grant appellant his diploma based on appellant's conviction for the murder of a fellow JHU student on the JHU campus. On appellee's motion for summary judgment, the Circuit Court for Baltimore City granted judgment in favor of appellee, thereby approving JHU's disciplinary decision to deny appellant a diploma. Appellant noted this appeal.

Appellant contends that the trial court erred as a matter of law in granting appellee's motion for summary judgment and for not entering summary judgment in his favor. He argues that 1) appellee had no authority to discipline him because he had completed all of his degree requirements prior to his criminal activity; and 2) appellee denied him due process in the disciplinary proceeding initiated against him, particularly by failing to take into account appellant's mental condition as required under the Americans with Disabilities Act. Additionally, appellant contends he is entitled to an award of attorneys' fees and punitive damages.

For the reasons that follow we shall affirm the judgment of the circuit court.

## FACTS

The facts of this case are undisputed. Appellant enrolled at JHU in 1992. By the end of the fall 1995 semester, appellant had completed his course of study. JHU holds a graduation ceremony once annually, at the end of the spring semester. Appellant did not register for classes or pay tuition for the spring 1996 semester. During the spring semester, appellant was living with his grandmother in Rhode Island. Appellant, however, continued to maintain consistent contact with the JHU community. According to an affidavit filed by JHU's Dean of Students, Susan Boswell, appellant manned a student election table on campus in March of 1996. Additionally, Dean Boswell affirmed that she communicated with appellant on

numerous occasions during the spring semester regarding complaints of harassment brought by a fellow JHU student, Rex Chao. During the course of these communications, Dean Boswell informed appellant that he would have to notify the campus security or her office when he intended to be on campus. Appellant notified Dean Boswell of his intention to attend a meeting of a student political organization on April 10, 1996.

Appellant attended the meeting. While there, appellant spoke and passed out flyers opposing the candidacy of Mr. Chao for the organization's president. After the meeting, while still on the JHU campus, appellant pursued Mr. Chao and confronted him. At this point, appellant shot and killed Mr. Chao. Appellant pled guilty to murdering Mr. Chao in addition to related handgun violations and is currently serving a thirty-five year prison sentence.

On May 15, 1996, Dean Boswell wrote to appellant and informed him that his diploma would be withheld pending the resolution of his criminal charges. JHU rested its decision to withhold appellant's diploma on provisions of JHU's Student Handbook ("Handbook"). The Handbook provides, in pertinent part:

> In order for a student to be approved for graduation, s/he must resolve any outstanding charges of fees or of misconduct ... and must have complied with the terms of any penalties imposed as a result of misconduct....
>
> *The university does not guarantee the award of a degree or a certificate of satisfactory completion of any course of study* or training program to students enrolled in any instructional or training program. The award of degrees and certificates of satisfactory completion is conditioned upon satisfaction of all current degree and instructional requirements at the time of such award, *compliance with the university and divisional regulations, as well as performance meeting bona fide expectations of the faculty.* (emphasis added).

After Dean Boswell learned of appellant's guilty plea, she wrote him again on July 17, 1997, to notify appellant that the Dean's Office was initiating disciplinary proceedings against him under the provisions of JHU's 1995–96 Student Handbook and Academic Manual. Dean Boswell further informed appellant that she would make her decision on August 1, 1997, and that he could submit any materials that he wished her to consider, and that he or his parents could speak to her by telephone.

At appellant's request, Dean Boswell granted appellant an extension to reply to the charges and provided him with relevant provisions of the Handbook. On August 12, 1997, appellant sent Dean Boswell a letter accompanied by a "Motion to Dismiss Any and All Charges Against Mr. Robert J. Harwood, Jr." In his motion, appellant claimed, *inter alia*, that he was not subject to the jurisdiction of the Dean's Office because he was no longer a student, that his actions were not punishable under the Undergraduate Student Conduct Code ("Conduct Code"), and that Dean Boswell "continues to violate [the Conduct Code] by denying [him] a hearing."

Dean Boswell wrote to appellant on August 28, 1997, and informed him that he was expelled from JHU and would not be awarded his degree. In doing so, Dean Boswell informed appellant that he remained subject to the Conduct Code until the award of his diploma. Appellant appealed this decision to Larry G. Benedict, Dean of Homewood Student Affairs, who affirmed Dean Boswell's decision on September 10, 1997.

On May 1, 1998, appellant filed a declaratory judgment action in the Circuit Court for Baltimore City seeking the award of his diploma. With its answer, appellee filed a motion for summary judgment. The circuit court conducted a hearing on the motion on November 18, 1998, and the hearing judge found that appellant was subject to the disciplinary action of JHU and that JHU did not act arbitrarily or capriciously in denying appellant his degree. The court entered an order granting appellee's motion for summary judgment on November 19, 1998.

Additional facts will be added as necessary to supplement our discussion.

## DISCUSSION

### A.

### Standard of Review

■ Summary judgment is appropriate where there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Md. Rule 2–501. In reviewing the grant of a motion for summary judgment, we review the trial court's ruling as a matter of law. *See Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993). In other words, we must determine whether the trial court was legally correct. *See Nationwide Mut. Fire Ins. Co. v. Tufts,* 118 Md.App. 180, 186, 702 A.2d 422 (1997), *cert. denied,* 349 Md. 104, 707 A.2d 89 (1998). Additionally, we review the same information from the record and decide the same issues of law as the trial court. *See Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591–92, 578 A.2d 1202 (1990).

While "summary judgment in a declaratory judgment action is 'the exception rather than the rule,' summary judgment may be warranted when there is no dispute" of material facts. *Nationwide Mut. Ins. Co. v. Scherr,* 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied,* 337 Md. 214, 652 A.2d 670 (1995) (quoting *Loewenthal v. Security Ins. Co.,* 50 Md.App. 112, 117, 436 A.2d 493 (1981)). The moving party has the burden to show the absence of a genuine issue of material fact. *See Bond v. NIBCO, Inc.,* 96 Md.App. 127, 135, 623 A.2d 731 (1993). Once the movant makes this showing, the burden shifts to the nonmoving party to identify "with particularity the material facts that are disputed." Md. Rule 2–501(b). As the trial judge correctly noted, neither party in the present controversy disputes any material facts. Therefore, resolution of this controversy by summary judgment is appropriate.

## B.

## JHU acted within its power when it expelled appellant and refused to issue him a diploma.

Both parties claim they are entitled to summary judgment as a matter of law. Appellant contends he is entitled to summary judgment and the award of his diploma because, at the time of his crimes, he had completed all of his required course work and was no longer subject to the disciplinary authority of JHU. Appellee contends that summary judgment in its favor was properly granted because its "policy clearly empowered it to withhold a degree from [appellant] even though he had finished his course work prior to committing murder on its campus." We agree with appellee, and hold the trial court properly granted summary judgment in its favor.

 The relationship between a student and a private university is largely contractual in nature. *See Napolitano v. Trustees of Princeton Univ.*, 186 N.J.Super. 548, 453 A.2d 263, 273 (1982) (citing cases); *see also Baltimore Univ. v. Colton*, 98 Md. 623, 636, 57 A. 14 (1904). "When a student is duly admitted by a private university … there is an implied contract between the student and the university that, if [the student] complies with the terms prescribed by the university, [the student] will obtain [a] degree." *Carr v. St. John's Univ.*, 17 A.D.2d 632, 231 N.Y.S.2d 410, 413, *aff'd*, 12 N.Y.S.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18 (1962); *see* 15A Am.Jur.2d *Colleges and Universities* § 31 at 292–93 (1976). The " 'terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications' " of a university, and the university is required to conduct its hearings and enforce its policies consistent with the terms. *Fellheimer v. Middlebury College*, 869 F.Supp. 238, 242 (D.Vt.1994) (quoting *Merrow v. Goldberg*, 672 F.Supp. 766, 774 (D.Vt.(1987)).

 School discipline is not an area in which courts lay claim to any expertise. *See Smith v. School City of Hobart*, 811 F.Supp. 391, 393 (N.D.Ind.1993). Consequently, "courts

will not generally interfere in the operations of colleges and universities." *Lexington Theological Seminary, Inc. v. Vance*, 596 S.W.2d 11, 13 (Ky.Ct.App.1979). Courts must "enter the realm of school discipline with caution" and allow schools flexibility in establishing and enforcing disciplinary procedures. *Woodis v. Westark Community College*, 160 F.3d 435, 438 (8 th Cir.1998). Nevertheless, "a college 'may not act maliciously or in bad faith by arbitrarily and capriciously refusing to award a degree to a student who fulfills its degree requirement[s].' " *Johnson v. Lincoln Christian College*, 150 Ill.App.3d 733, 103 Ill.Dec. 842, 501 N.E.2d 1380, 1384 (1986), *appeal denied*, 114 Ill.2d 546, 108 Ill.Dec. 418, 508 N.E.2d 729 (1987) (quoting *Tanner v. Board of Trustees of Univ. of Illinois*, 48 Ill.App.3d 680, 6 Ill.Dec. 679, 363 N.E.2d 208, 209– 10 (1977)). When a private university does so, a court will step in and require it to live up to the conditions of the agreement it made with a student. *See Woods v. Simpson*, 146 Md. 547, 551, 126 A. 882 (1924) ("[w]hen it is made clear that an action with respect to a student has been, not an honest exercise of discretion[,] ... but beyond the limits of that discretion ... the courts may be called upon for relief.").

Although the actions of public universities are subject to due process scrutiny, private universities are not bound to provide students with the full range of due process protection. *See NCAA v. Tarkanian*, 488 U.S. 179, 192, 109 S.Ct. 454, 464, 102 L.Ed.2d 469 (1988) ("A state university without question is a state actor. When it decides to impose a serious disciplinary sanction ... it must comply with the terms of the Due Process Clause of the Fourteenth Amendment to the Federal Constitution."); *Fellheimer*, 869 F.Supp. at 243 (holding that when reviewing a private university's decision to discipline a student: "Constitutional due process standards should not be used to judge the College's compliance with contractual obligations."). JHU is a private university. Our review, therefore, is limited to whether: 1) JHU had the authority to withhold appellant's diploma after he had completed his required coursework; and 2) JHU acted arbitrarily and capriciously in expelling appellant.

i.

## A private university has the right to withhold a diploma from a student who has completed all required course work.

■ The issue of whether a private university may withhold the diploma of a student who has completed all of the required course work has not been addressed by Maryland courts. It has arisen only occasionally in other jurisdictions. Courts that have considered the issue, however, have supported a private university's right to do so. The Supreme Court of New York stated over a century ago:

> It cannot be that a student having passed all examinations necessary for a degree can, before his graduation, excite disturbance and threaten injury to the school or college without being amenable to some punishment. No course would seem open except to forthwith expel him or refuse his degree.

*People ex rel. O'Sullivan v. New York Law Sch.,* 22 N.Y.S. 663, 665 (1893).

In *Lexington Theological Seminary v. Vance,* 596 S.W.2d at 12, a student told the president of the seminary that he was homosexual. Subsequently, the student finished all of the requirements to obtain a master of divinity degree. After the student finished his course work, the faculty of the seminary recommended that the student not receive his degree. The student then initiated legal proceedings to obtain his degree. On appeal, the seminary argued, *inter alia,* that the student breached his contract with the seminary. The relevant portions of the seminary's catalog provided:

> [The] Seminary ... [f]inding its charter in the gospel ... seeks to equip its graduates to serve as contemporary servants of that gospel.

> ... [S]tudents are expected ... to be firmly committed to the role and mission with which they will begin their ministry.

At the time of his application for candidacy, the student's overall seminary profile, including academic performance, field education leadership, financial responsibility, and fundamental character, is evaluated by the faculty.

[The Seminary] will consider for admission applicants ... [who] display traits of character and personality which indicate probable effectiveness in the Christian ministry.

*Id.* at 13.

The court found that the words and phrases used in the catalog were not vague or indefinite and could be "easily understood by anyone who possesses the intelligence to gain admission...." *Id.* Moreover, the court found that the seminary did not act arbitrarily and capriciously in determining that the student had violated the provisions of this code. *See id.* at 15. Accordingly, the court did not disturb the seminary's decision not to confer a degree on the student. *See id.*

Likewise, in *Carr v. St. John's Univ., supra,* also involving a religious academic institution, a student who had completed all of his courses and paid all tuition and fees requested by the university was dismissed for being married in a civil ceremony. *See Carr,* 231 N.Y.S.2d at 412–13. The university's bulletin provided:

In conformity with the ideals of Christian education and conduct, the University reserves the right to dismiss a student at any time on whatever grounds the University judges advisable. Each student by his admission to the University recognizes this right. The continuance of any student on the roster of the University, the receipt of academic credit, graduation, the granting of a degree or a certificate, rest solely within the powers of the University.

*Id.* at 412.

The New York court also recognized implied terms in the contract. Specifically, the court held:

'Obviously, and of necessity, there is implied in such contract a term or condition that the student will not be guilty of such misconduct as would be subversive of the discipline

of the college or school, or as would show him to be morally unfit to be continued as a member thereof.'

*Id.* at 413 (quoting *Goldstein v. New York Univ.*, 76 A.D. 80, 78 N.Y.S. 739, 740 (1902)). Based on the language in the student bulletin, the court found the university was acting within its power in refusing to confer a degree upon the student. In so holding, the court stated the general rule: "When a university, in expelling a student, acts within its jurisdiction, not arbitrarily but in the exercise of an honest discretion based on facts within its knowledge that justify the exercise of discretion, a court may not review the exercise of its discretion." *Id.* at 414. The New York Court of Appeals later affirmed the decision in a memorandum opinion. *See Carr v. St. John's Univ.*, 12 N.Y.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18 (1962).

We are not presented here with the undefined notions of religious practices and morality that underlay the student dismissals in *Carr* and *Vance,* and express no opinion regarding such reasons for dismissal. The instant case involves murder, the most serious of crimes, an action that clearly fell within the Conduct Code's specific prohibition against acts "which are a danger to [a student's] own personal safety or which harm or have the potential of harming others, or [that] destroy, impair or wrongfully appropriate property." We consider *Vance* and *Carr* helpful, however, in their reliance on the principle that a student may be expelled after completing required course work based on provisions of a student handbook and other university publications. Indeed, in many instances a student handbook is often the only means a university has to govern students and ensure that students follow an appropriate course of conduct. Moreover, we fail to see the significance in the circumstance, emphasized by appellant, that appellant would have been awarded his degree before he murdered another student if JHU had a December graduation ceremony. Rather, the critical factor is that he had yet to be awarded his degree and remained subject to the policies and procedures enumerated in the Handbook.

The policy outlined in the Handbook clearly states that a student will not receive a degree based solely on the completion of course work. Moreover, the policy informs students that they must comply with JHU's policies in order to receive their degree and must resolve all outstanding charges of misconduct before being approved for graduation. Appellant's dismissal was based on specific provisions of JHU's Conduct Code.

We find no indication in the record that appellant had been approved for graduation. Nor do we find any evidence that appellant did not understand the Conduct Code regulations and the consequences of violating °them. Significantly, throughout the spring 1996 semester, appellant had repeated contacts with Dean Boswell and acknowledged her authority when he agreed to inform her when he would be on campus. Appellant also participated in the activities of a JHU approved organization, and went on a bus trip with the group. Appellant continued to be subject to the provisions of the Conduct Code before receiving his degree. Consequently, appellee had the authority to withhold his diploma.

Cases cited by appellant do not support his contention that JHU acted outside its authority in withholding his degree. In *Johnson v. Lincoln Christian College, supra,* a student finished all required casework and paid all fees. The college refused to award the student's degree based on charges that the student "might be homosexual." The court held that it was improper for a trial court to grant the college's motion to dismiss the action brought by the student to have his diploma awarded. *See Johnson,* 103 Ill.Dec. 842, 501 N.E.2d at 1391. There was no mention in *Johnson,* however, of any student handbook that provided additional terms beyond the completion of course work for the issuance of a degree. Additionally, *Johnson* was decided on a motion to dismiss. The court did recognize that "if [Johnson's] allegation [that he was improperly dismissed] is not true, [Lincoln Christian College] should be easily able to present evidence to disprove [the] allegation...." *Id.* 103 Ill.Dec. 842, 501 N.E.2d at 1384. Thus, *Johnson* does not stand for the proposition that a student

must be awarded a degree when he or she completes all required course work, but rather, simply supports the theory that if a student fulfills all of the requirements established by the university, then that student is entitled to a degree.

Appellant's reliance on *Shuman v. Cumberland Valley Sch. Dist.*, 113 Pa.Cmwlth. 63, 536 A.2d 490 (1988), *appeal denied,* 527 Pa. 658, 593 A.2d 428 (1991), is also misplaced. *Shuman* involved a student in a public high school who was expelled on graduation day, after completing his studies. The court held that the student was entitled to his degree. The court, however, emphasized the "extreme narrowness of [its] holding" and made it clear that it was basing its decision entirely on a state statute that required a high school to issue a certificate to each student that satisfactorily completed the required course of instruction. *Id.* at 492.

Finally, appellant cites *Valentine v. Independent Sch. Dist. of Casey,* 191 Iowa 1100, 183 N.W. 434 (1921), for the proposition that a school may not withhold a diploma where the only act remaining is the ministerial act of dispensing the diploma. In *Valentine,* a high-school student was denied her diploma because she refused to wear a cap and gown during the graduation ceremony. Again, *Valentine* dealt with the actions of a public high school, not a private university. Additionally, the court ruled in the student's favor because there was no "proof that the [school] board adopted a rule ... relative to the wearing of caps and gowns" during the graduation ceremony. *Id.* at 436. The court did, however, recognize that a school must award a diploma only to a student who "completes the prescribed course of study *and who is otherwise qualified.*" *Id.* at 437 (emphasis added).

### ii.

### JHU did not act arbitrarily and capriciously in refusing to award appellant his degree.

Having concluded that JHU had the power to withhold appellant's degree, we now address whether it acted arbitrarily and capriciously in doing so. Dean Boswell charged appel-

lant with violating the following provisions of the Conduct Code:

> The university expects all students to be law abiding citizens, to respect the rights of others, and to refrain from behavior which tends to impair the university's purpose or its reputation in the community. Students who have committed acts which are a danger to their own personal safety or which harm or have the potential of harming others, or who destroy, impair or wrongfully appropriate property, will be disciplined and may forfeit their right to be members of the university community. For example, students are expected to refrain from:
>
> B. Behavior which causes, or can reasonably be expected to cause, physical harm to a person.
>
> C. Physical or verbal threats against or intimidation of any person which results in limiting her/his full access to all aspects of life at the university.
>
> I. The unauthorized use, possession, or storage of any chemicals, weapons or explosives, including fireworks, on university property.
>
> M. Failure to observe policies regulating the use of university buildings, property, or other resources.
>
> N. Violations of criminal law which occur on university premises or in connection with university functions which affect members of the university community; or which impair the university's reputation.

According to the Handbook, the Dean of Students retained the power to hear and decide disciplinary cases "of high sensitivity and complexity." Moreover, the Dean of Students exclusively maintained the power to hear charges and discipline students for the possession and use of weapons. Dean Boswell explained to appellant the procedure that would be invoked in resolving the charges against him:

> In accordance with the University's procedures, you have the opportunity to respond to the charges against you prior to my making a decision. Due to your incarceration it is not possible to have you personally appear before me. Howev-

er, I will give you the opportunity to submit to me a statement ... and any other materials you wish me to consider.... Should you wish to speak with me by telephone, you may do so by pre-arrangement with my office. I also will make myself available to speak or meet with your parents and others who may wish to make a statement in your behalf.

Appellee did not act arbitrarily and capriciously in expelling appellant. Dean Boswell timely notified appellant that he was suspended pending the resolution of his criminal case and adequately notified him of the provisions of the Conduct Code he was charged with violating. Appellant's murder of a fellow student and handgun violations were clear violations of the Conduct Code. Moreover, the procedures invoked by Dean Boswell were fair and comported with the requirements of the Handbook. Dean Boswell granted appellant an extension to respond to the charges so he could adequately prepare his defense and made herself available to both appellant and his parents. Additionally, there is no indication from the record that appellant ever took advantage of Dean Boswell's offer to discuss the charges by telephone.

That Dean Boswell both investigated the acts committed by appellant and subsequently rendered the decision to expel him is appropriate because the Handbook allowed the Dean of Students to act precisely in the capacity in which she did. *See Fellheimer*, 869 F.Supp. at 244. Furthermore, the record does not support any claim that Dean Boswell acted with partiality or harbored any personal animosity toward appellant. Finally, appellant was given the right to appeal Dean Boswell's decision to the Dean of Homewood Student Affairs, who fully concurred in Dean Boswell's decision. These procedures adequately protected appellant's rights.

For these reasons, we will not disturb the decision of the hearing court to grant appellee's motion for summary judgment.

## C.

### Additional Contentions Raised by Appellant.

Appellant also asserts that appellee violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, because appellee "charg[ed] and institut[ed] the disciplinary measure of denying him [a] degree ... [and] effectively punished [appellant] for conduct caused by his disability." Appellant claims that he suffered from a psychiatric disability and that appellee's treatment of him in light of his condition was inexcusable.

Appellant never advanced any issue relating to his mental condition or any claim under the ADA in the circuit court and is raising it for the first time before this Court. Maryland Rule 8–131(a) states:

Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

The clear meaning of this Rule is that no unpreserved issue may serve as the basis for reversal. *See Beeman v. Department of Health & Mental Hygiene,* 107 Md.App. 122, 159, 666 A.2d 1314 (1995). Accordingly, we decline to address any issue relating to appellant's mental condition.

Appellant also claims he is entitled to an award of attorneys' fees and punitive damages. These contentions are without merit.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**