Roland ONAWOLA, Plaintiff

v.

**JOHNS HOPKINS UNIVERSITY,**
et al., Defendants

No. CIV.A. AMD 05–1924.

United States District Court,
D. Maryland.

Feb. 6, 2006.

Roland Onawola, Dowingtown, PA, pro se.

Philip Shams Roberts, The Johns Hopkins University, Office of General Counsel, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

DAVIS, District Judge.

Dr. Roland Onawola, acting pro se, brought this action on July 14, 2005, against Johns Hopkins University and various individuals associated with the University, including faculty members, trustees, and deans. Shortly thereafter,

defendants filed an alternative motion to dismiss or for summary judgment under Fed.R.Civ.P. 12(b)(6), which I granted without prejudice, after, and for the reasons stated at length on the record during, an oral hearing.* Dr. Onawola then filed an amended complaint naming the University and a somewhat shorter list of its faculty as defendants.

Complete diversity of citizenship is present, as plaintiff is a citizen of Pennsylvania and all defendants, it appears, are citizens of Maryland. At the court's urging, plaintiff has narrowed his claims to three counts: (1) breach of contract under Maryland law; (2) race discrimination under 42 U.S.C. § 1981; and (3) retaliation under 42 U.S.C. § 1981. Now pending is the defendants' motion to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6). No hearing is necessary; for the reasons stated herein, I shall grant the defendants' motion.

### I.

Dr. Onawola, who is a native of Nigeria with a Ph.D., has been a student pursuing his Doctor of Science degree in epidemiology at the University's Bloomberg School of Public Health since the fall of 1991. At the time he commenced this action, and for some time before that, Dr. Onawola had satisfied all of the requirements for his degree except for completing his thesis. Although the University has a policy of allowing candidates a maximum of seven years from the date of matriculation to obtain the degree Dr. Onawola seeks, the University has repeatedly extended that deadline for Dr. Onawola.

The complaint alleges that, for the past 14 years, the University and its personnel have harassed Dr. Onawola, obstructed and "sabotaged" Dr. Onawola's thesis research, and otherwise subjected him to "illegal actions." Dr. Onawola contends that his poor treatment was the result of the University's animus toward him as a "black man of Nigerian origin."

In support of this contention, Dr. Onawola cites various acts and omissions of the faculty that purportedly had an adverse effect on his ability to obtain his degree. The amended complaint alleges that Dr. Onawola was not given a research assistantship by which he could be paid to conduct research; that Dr. Matanoski, one of the plaintiff's faculty advisors, neglected to keep appointments with him; and that generally Dr. Onawola failed to receive the tangible and intangible aid and assistance afforded non-black and/or non-African students. Evidently, in 1998, seven years after Dr. Onawola's matriculation, the University removed his name from the Epidemiology Department directory and with-

---

* Remarkably, plaintiff attached 31 exhibits to his original complaint and, while expressly incorporating by reference those 31 exhibits, he attached three more exhibits to the amended complaint. Not satisfied even with that, plaintiff also attached to the amended complaint five of the defendants' exhibits which had been attached to the defendants' original alternative motion. Accordingly, although a review of the file would suggest that this court has before it a motion for summary judgment (because plaintiff has attached sufficient exhibits to tell the story of his entire 14 year career as a student at the University), in fact the court considers only the amended complaint and the plethora of exhibits which plaintiff has incorporated by reference. *See, e.g., Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir.1999)(noting that exhibits are not superceded if the amended complaint effectively integrates them and stating that consideration of exhibits that were attached to the original complaint, omitted from the amended complaint, but still referred to and relied upon in the amended complaint, are properly considered on a 12(b)(6) motion)(citing with approval *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998)(observing that such practice furthers the policy of "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting .... documents upon which their claims are based.")).

held access to the "Epi Student's Room." Dr. Onawola also complains that a scholarship he had been awarded was reduced and eventually eliminated.

The centerpiece of Dr. Onawola's theory of the case seems to be a November 1, 2002, letter authored by himself and edited by his thesis advisor, Dr. Samet. *Original Complaint, Exh. 1.* In the letter, Dr. Onawola complained that the University had delayed his progress toward his degree. Dr. Onawola construes Dr. Samet's edits as an adoption and admission of the substance of the letter. This suggestion is singularly without merit. Similarly, Dr. Onawola makes several accusations against faculty members and the University based on Dr. Onawola's own subjective, and highly unreasonable reactions to perceived slights. (For example, Dr. Onawola refers to an incident in which he confronted a faculty member, saying, "Why are you doing this to me? It's because I'm Black, isn't it?" *Amended Complaint ¶ 54.* Dr. Onawola construes the faculty member's alleged response, "Just go and do as I said," to be evidence of racial animus.)

Dr. Onawola's primary accusation, though, is that the University and its faculty undermined his thesis research and thereby disabled him from completing his degree requirements. Dr. Onawola alleges that the faculty insisted on the inclusion of a mental health survey; declined to allow Dr. Onawola to compensate study participants using monies received through a federal grant; and failed to request a second extension of time for the grant, all of which hindered his research progress. According to Dr. Onawola, his faculty thesis committee required him to include in his research survey a questionnaire which, in his judgment, needlessly increased the time required to administer the full research survey, thereby reducing participation. Furthermore, in response to the substantial time commitment, Dr. Onawola wanted to compensate research subjects, and his faculty thesis committee denied him permission to use money obtained through a grant for that purpose. Finally, and most recently, Dr. Samet, a member of Dr. Onawola's thesis committee and the principal investigator for his research project, declined to request a second extension of time for the grant that funded the thesis research. In sum, Dr. Onawola ascribes color and nationality as the reasons for all his disappointment and unhappiness in his long, unfinished trek to his degree.

## II.

The standard applicable to consideration of a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is well known:

> A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). Furthermore, the " 'Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.' " *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, Rule 8(a)(2) requires only a " 'short and plain statement of the claim showing that the pleader is entitled to relief.' " Fed.R.Civ.P. 8(a)(2).

*Migdal v. Rowe Price–Fleming Int'l, Inc.,* 248 F.3d 321, 325–26 (4th Cir.2001). It is also important to be mindful, however, that the defendants are entitled to have the *legal sufficiency* of the complaint fully examined and that, although the truth of all facts is assumed, consistent with the complaint's allegations, *see Hishon v. King & Spalding,* 467 U.S. 69,

73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the court need not accept the legal conclusions drawn from the facts, *see Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir. 1991), or unwarranted inferences, unreasonable conclusions, or arguments. *See generally* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990 & 2004 Supp.).

*Marketing Prods. Mgmt., LLC v. Healthandbeautydirect.com, Inc.,* 333 F.Supp.2d 418, 420 (D.Md.2004).

## III.

Dr. Onawola correctly asserts that upon his matriculation to the University, an implied contract was established. "The relationship between a student and a private university is largely contractual in nature." *Harwood v. Johns Hopkins Univ.,* 130 Md. App. 476, 483, 747 A.2d 205, 209, *cert. denied,* 360 Md. 486, 759 A.2d 231 (2000). Indeed, under this theory, courts have on rare occasions required academic institutions to confer degrees as specific performance of the implied contract. *E.g., De-Marco v. Univ. of Health Sciences/Chicago Med. Sch.,* 40 Ill.App.3d 474, 352 N.E.2d 356, 362 (1976)(affirming order requiring that degree be awarded to student-plaintiff). Notably, in those unusual cases where courts have seen fit to insert themselves into the academic milieu, they have universally done so where the student had essentially completed all of his academic requirements and the school's refusal to grant the degree was found to be "arbitrary and capricious." *See id.* ("[P]laintiff's failure to graduate was never a question of academic excellence, but was a question of whether he had complied with all the conditions which could legitimately be imposed on him after he had been dismissed for reasons extraneous to any scholastic considerations.").

At the same time, however, mindful of their lack of competence in assessing academic judgments, "courts will not generally interfere in the operations of colleges and universities." *Harwood,* 130 Md.App. at 483, 747 A.2d at 209 (internal quotation omitted); *see generally Bilut v. Northwestern University,* 269 Ill.App.3d 125, 206 Ill.Dec. 531, 645 N.E.2d 536, (Ill.App.1994) (reversing award of specific performance and vacating injunction ordering university to afford additional time to plaintiff-student within which to earn her degree), *appeal den.,* 161 Ill.2d 523, 208 Ill.Dec. 357, 649 N.E.2d 413 (1995); *and see University of Pa. v. EEOC,* 493 U.S. 182, 199, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) ("[C]ourts have stressed the importance of avoiding second-guessing of legitimate academic judgments.")(quoted in *Urofsky v. Gilmore,* 216 F.3d 401, 434 (4th Cir.2000)(Wilkinson, C.J., concurring), *cert. denied,* 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 662 (2001)); *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 92, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (stating that "[c]ourts are particularly ill equipped to evaluate academic performance"); *Huang v. Bd. of Governors of the Univ. of N.C.,* 902 F.2d 1134, 1142 (4th Cir.1990)("When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment."); *cf.* Hazel Glenn Beh, *Student Versus University: The University's Implied Obligations of Good Faith And Fair Dealing,* 59 MD. L. REV. 183, 224 (2000) ("Courts are understandably reluctant to step into the middle of university-student disputes. They correctly note that it is inappropriate to substitute their own judgment for the institution's academic and management decisions.").

Dr. Onawola's claim for breach of contract takes a different tack from those in which student-plaintiffs have prevailed.

As noted above, Dr. Onawola clearly has not completed all of the requirements for the degree he seeks. Indeed, unlike the other cases in this vein, the relief he seeks does not include compelling the University to grant him a degree. Rather, Dr. Onawola argues that the breach of contract came about when the University hindered him in performing his own contractual obligations, specifically, completing his thesis.

■ Assuming that a contract existed between Dr. Onawola and the University, and that the contract included a requirement of "good faith and fair dealing" on the part of the University, see *Food Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 535–36, 200 A.2d 166, 174–175 (1964); *Parker v. Columbia Bank*, 91 Md.App. 346, 604 A.2d 521, 531 (1992), as a matter of law, the University quite assuredly did not breach its contract with Dr. Onawola. The exhibits accompanying the plaintiff's' filings clearly evince a relationship in which the University seemingly made every reasonable accommodation for Dr. Onawola, above and beyond any reasonably-imagined contractual requirement. Expertise was volunteered, assistance was rendered, and deadlines were extended, all presumably for the purpose of helping Dr. Onawola succeed in obtaining his degree.

Many (if not all) of the events of which Dr. Onawola complains are academic judgments, properly left to the faculty of the University, not Dr. Onawola, and certainly not this court. No implied contract which might exist here could be understood to waive the University's right to maintain stringent academic standards; nothing in the record suggests that the faculty acted in an arbitrary or capricious manner toward Dr. Onawola.

Finally, those actions of which Dr. Onawola complains that are not, strictly speaking, within the domain of academic judgment, such as the University refusing him access to office space, are plainly outside the scope of any contractual agreement. To the extent that a contract existed, it was based on the reasonable expectations of the parties. Here, Dr. Onawola has failed to allege any facts which would give him a reasonable expectation that he was entitled to office space or any of the other collateral benefits of which he claims to have been improperly deprived.

## IV.

What is said above essentially disposes of plaintiff's claim under 42 U.S.C. § 1981, even assuming a cognizable claim of discrimination can be discerned from the four corners of the amended complaint and its multitude of exhibits. To be sure, the pleading requirement is not onerous. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). However, a plaintiff is required to state facts sufficient to support a claim for relief. Dismissal is appropriate if the complaint fails to allege any facts that might support an inference that the defendant intentionally discriminated against plaintiff because of color or national origin. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003)(stating that "[w]hile a plaintiff is not charged with pleading facts sufficient to prove [its] case, as an evidentiary matter, in [its] complaint, a plaintiff *is* required to allege facts that support a claim for relief") (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)).

■ The facts alleged in the amended complaint are insufficient to support a remedy under § 1981 for discriminatory interference with contract. As discussed above, the complaint plainly fails to allege facts showing a breach of contract. Furthermore, despite an abundance of repetitive and conclusory statements alleging racial animus on the part of the University, Dr. Onawola has alleged no facts sugges-

tive of a connection between his perceived inferior treatment and his color or national origin. "Law does not blindly ascribe to race all personal conflicts between individuals of different races." *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 282 (4th Cir.), *cert. denied,* 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 125 (2000).

The record plainly shows what commonsense and common experience teaches: that Dr. Onawola's experience at the University, while not without its setbacks, was nothing outside the usual experience of a doctoral student in a high-quality, rigorous program. Second, on those occasions that Dr. Onawola encountered difficulties, there was no basis to conclude that such problems were in any way related to his color or national origin.

█ The same is true of Dr. Onawola's allegation that the University retaliated against him in violation of § 1981 by failing to request a further extension of the federal grant which funded his thesis research and by reassigning and emptying the on-campus office space Dr. Onawola had occupied while working on the research. Among other elements, a successful retaliation claim under § 1981 requires the plaintiff to demonstrate that he was subjected to an adverse action. *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir.2001); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 543 (4th Cir. 2003). The adverse action required to sustain a retaliation claim has been characterized as "some impairment of the plaintiff's rights." *Saleh v. Upadhyay,* 11 Fed.Appx. 241, 255 (4th Cir.2001) (citing *Am. Civil Liberties Union, Inc. v. Wicomico County,* 999 F.2d 780, 785 (4th Cir.1993)). No such adverse action has been pleaded in the amended complaint; therefore, this claim too fails, to the extent is not simply redundant of his discrimination claim.

The two actions complained of, while undoubtedly unpleasant for Dr. Onawola, were entirely within the discretion of the University to take and did not impair any right of Dr. Onawola. As mentioned above, courts are rightly hesitant to interfere in the area of academic decisions because they lack competence to resolve questions such as whether to request an extension of funding for an admittedly stalled project. Dr. Onawola had no right to an extension of the federal grant nor any right to compel Dr. Samet to request such an extension. Accordingly, there could be no cognizable "adverse action" in Dr. Samet's even-handed exercise of discretion. Furthermore, Dr. Onawola was not entitled to office space at the University merely by virtue of being a student. Therefore, the University's decision to discontinue Dr. Onawola's use of the office space and make his belongings available for him to retrieve from another location did not intrude on any right of Dr. Onawola.

In sum, as a matter of law, Dr. Onawola has failed to allege facts sufficient to support the conclusion that he was the victim of an adverse action (or that any action was motivated by color or national origin) and therefore his retaliation claim must fail. More than that even, considering the mountain of exhibits accompanying the amended complaint, plaintiff has affirmatively pleaded himself out of any cause of action he might otherwise have had. *Cf. Bell v. Ohio State University,* 351 F.3d 240 (6th Cir.2003) (affirming summary judgment in favor of medical school against disappointed student alleging claim under § 1981).

### V.

For the foregoing reasons, the motion to dismiss shall be granted with prejudice. An order follows.